1

2

3            **UNITED STATES DISTRICT COURT**

4               **DISTRICT OF NEVADA**

5

6   CHRISTOPHER LITTLE,                )
                                        )        3:04-CV-0514-PMP (VPC)
7            Plaintiff,                 )
                                        )
8        vs.                           )        **REPORT AND RECOMMENDATION**
                                        )        **OF U.S. MAGISTRATE JUDGE**
9   TED D'AMICO, ET AL.,                )
                                        )
10           Defendants.                )        January 4, 2007
                                        )

11

12        This Report and Recommendation is made to the Honorable Philip M. Pro, United States

13   District Judge.   The action was referred to the undersigned Magistrate Judge pursuant to 28

14   U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary

15   judgment (#24/25). Plaintiff opposed (#30) and defendants replied (#31).   For the reasons stated

16

17   below, the Court recommends that defendants' motion for summary judgment (#24/25) be

18   granted.

19                **I.  HISTORY & PROCEDURAL BACKGROUND**

20        Plaintiff Christopher Little, a *pro se* prisoner, is currently incarcerated by the Nevada

21   Department of Corrections ("NDOC") at the Nevada State Prison ("NSP") (#13).  Plaintiff brings

22

23   his complaint pursuant to 42 U.S.C. § 1983, alleging in Count I that prison officials violated his

24   Eighth Amendment right against cruel and unusual punishment because the defendants failed to

25   treat or allow him to have a surgery for a hernia (#16).[1]  Specifically, plaintiff alleges that he

26

27   ────────────────

28        [1] Plaintiff filed his original complaint on December 10, 2004 (#4), an amended complaint on January 3, 2005 (#5) and a second amended complaint on November 9, 2005 (#16).  Plaintiff brought a Fourteenth Amendment Due Process claim in his original complaint (#4) and his amended complaint (#5), which the Court dismissed (#3, #6).

discovered he was suffering from a hernia on August 18, 2003, while in the custody of NDOC at Lovelock Correctional Center ("LCC").  *Id*.  Plaintiff alleges that he reported his medical condition to the unit officer, defendant Dickerman, but that Dickerman refused to escort him to the medical department for care.  *Id*.  On August 19, 2003, plaintiff had his semi-annual review with defendant Ennis, his caseworker, during which plaintiff apparently showed Ennis the hernia. *Id*.  Plaintiff alleges that defendant Ennis took plaintiff's kite to medical, returned, and then escorted plaintiff to the infirmary, where a medical staff member saw him.  *Id*.  Plaintiff further alleges that on September 8, 2003, he was transferred to Northern Nevada Correctional Center ("NNCC") for a determination whether he required surgery on his hernia.  *Id*.  He alleges that he was denied hernia surgery without explanation and was returned to LCC on September 23, 2003, without any treatment other than pain medication.  *Id*.  Plaintiff alleges that he was in constant pain from his hernia and had difficulties receiving his pain medication "due to the lack of a proper medication delivery method by the staff."  *Id*.

NDOC Administrative Regulation 618 governs cosmetic and elective surgery for prisoners (#24, Ex. F1).  AR 618 defines "elective surgery" as "surgery that is not medically necessary to preserve life or limb," and states that elective surgery will not be performed on any inmate.  *Id*. The "Utilization Review Panel," which consists of the Medical Director, several other doctors, and the prisoner's treating physician, confer together to decide whether the prisoner's condition is "significantly" or "rapidly" deteriorating or is a "threat to life or limb;" however, the Medical Director has the final authority to decide whether surgery is medically necessary.  *Id*.

The evidence submitted by the defendants, #24, Exs. A – I; #25, Exs. D1 – D3 (submitted *in camera*), and uncontradicted by the plaintiff, establishes plaintiff's medical history.  Dr. Scott saw plaintiff on August 19, 2003 (#25, Ex. D1, Doc No. 69).  He diagnosed the plaintiff with a

right inguinal hernia of "moderate size," found that it "easily reduce[d]," gave the plaintiff an athletic supporter and prescribed Percogesic, a pain reliever, to take as needed.[2] *Id.*; *see also* #24, Ex. A, pp. 21-22.  Additionally, Dr. Scott, who plaintiff admits is not a surgeon, referred the plaintiff to NNCC for a surgical consult.  *See* #24, Ex. A, pp.13-14.  On September 8, 2003, Dr. Pitts examined plaintiff at NNCC and recommended that the plaintiff have surgery on his hernia. *See* #30, Ex. 1, Ex. 2.  On September 18, 2003, the Utilization Review Panel denied plaintiff's request for surgery, finding that it was "elective."  *See* #24, Ex. A, pp.15-16; *see also* #30, Ex. 1.

Plaintiff continued to take the pain medication and a muscle relaxer, Flexeril, off and on until early 2005, and the evidence indicates that each time he requested a refill of medication during this time, he received it.  *See* #24, Ex. A., pp. 32-36; *see also* #24, Ex. A, Depo Exhibit C, pp. 5, 6, and 8.  In March 2004, the prison discontinued its "keep on person" policy that had allowed inmates to keep these particular medications to take "as needed."  *See* #24, p. 6, ¶ 23. The new policy required inmates to appear several times a day for "pill call" to request their prescribed medications.  *Id.*, Ex. A, p. 25.  The plaintiff did not consistently come to pill call to request his medications, *see* #25, Ex. D3, and as a result, Dr. Scott discontinued the plaintiff's prescription pain medication based on his conclusion that the plaintiff was not in pain.  *See* #24, Ex. A, p. 30, 42; *see also* #25, Ex. D1, Doc. No. 59.[3]

---

[2] A hernia is "reducible" when the contents of the intestines that have gone through the hernia can be replaced by a clinician; when they cannot be replaced, the hernia is non-reducible.  A non-reducible hernia has the potential for "strangulation."  *See* #24, Ex. E, pp. 4-5.

[3] The plaintiff's March 21, 2005 medical record entry by Dr. Scott states, "Patient had been taking Flexerol [sic] and PCG once a day.  Last week is Feb 05 he no showed 5 out of 7 days.  Now he wants it refilled.  I told him his pattern of use is not indicative of [illegible] pain syndrome that necessitates his taking meds on a regular basis which he really never did.  So I told him why we weren't going to refill the PCGs or Flexeril – that being (1) his pattern of use of these meds do not reveal [illegible] pain..."  *See* #25, Ex. D1, Doc. No. 59.

1     In August 2005, Dr. Snider saw plaintiff, and he reported that the hernia had "enlarged"

2  since 2003 and was still "reducible, but with a great deal of pain." *See* #25, Ex. D1, Doc. No. 57.

3  At that time, Dr. Snider appears to have only prescribed a medical bottom bunk. *Id*.  On October

4  12, 2005, Dr. Snider examined the plaintiff again and found that the hernia would not reduce. *Id.*

5  at Doc. No. 57.  Dr. Snider referred the plaintiff to surgery, which the plaintiff had on December

6

7  13, 2005. *Id*. at Doc No. 56-57.

8                                    **II.  DISCUSSION & ANALYSIS**

9       **A.  Discussion**

10          **1. Summary Judgment Standard**

11

12       Summary judgment allows courts to avoid unnecessary trials where no material factual

disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471

13

14 (9th Cir. 1994).  In deciding whether to grant summary judgment, the court must view all

15 evidence and any inferences arising from the evidence in the light most favorable to the

16 nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  In inmate cases, the

17 courts must

18
> distinguish between evidence of disputed facts and disputed
> matters of professional judgment.  In respect to the latter, our
> inferences must accord deference to the views of prison
> authorities.  Unless a prisoner can point to sufficient evidence
> regarding such issues of judgment to allow him to prevail on the
> merits, he cannot prevail at the summary judgment stage.

19

20

21

22

23 *Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006).  The court grants summary

24 judgment if no genuine issues of material fact remain in dispute and the moving party is

25 entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(C).  Where reasonable minds could

26 differ on the material facts at issue, however, summary judgment should not be granted.

27

28 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 , 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248.

### 2.  Deliberate Indifference and Sufficiently Serious Harm

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted).  In *Farmer v. Brennan*, 511 U.S. 825 (1994) the Supreme Court reiterated the standards for prevailing on an Eighth Amendment claim, stating that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828, *citing Helling v. McKinney*, 509 U.S. 25 (1993), *Wilson v. Seiter*, 501 U.S. 294 (1991), and *Estelle v. Gamble*, 429 U.S. 97 (1976).  To establish an Eighth Amendment violation, a plaintiff's case must satisfy an objective standard – that the deprivation alleged was "sufficiently serious," and a subjective standard – deliberate indifference by the prison official, or in other words, that the prison official had a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297-304; *Farmer*, 511 U.S. at 834.

A "serious medical need" (the objective standard) exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104.  The Ninth Circuit's examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find

important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) *citing McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled in part on other grounds in WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

The subjective standard of deliberate indifference for Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, *quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. Essentially, acting or failing to act with deliberate indifference is "the equivalent of recklessly disregarding" a substantial risk of serious harm to the inmate. *Id.* In order to prove deliberate indifference, plaintiff must show that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Mere negligence on the part of prison medical staff is not sufficient to prove deliberate indifference. *Id*. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060. Prison medical staff does not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

**B. Analysis**

Defendants advance three arguments in support of summary judgment: (1) that they

responded appropriately to plaintiff's medical needs; (2) that surgery for a reducible hernia is not necessary, is considered elective, and the plaintiff was given pain medication and a truss to manage the hernia; and (3) that plaintiff consistently failed to show up for pill call to receive his medication, indicating to defendants that plaintiff was not in serious pain (#24).

Plaintiff contends that Dr. Scott did not examine him on August 19, 2003 to determine whether the hernia was reducible, strangulated or in danger of rupturing (#30).  Further, plaintiff argues that when Dr. Pitts recommended he receive surgery to repair his hernia in 2003, defendants refused.  *Id*.  Moreover, plaintiff contends that defendants' pain management plan was so cursory it amounted to no treatment at all, and as a result, plaintiff was in constant pain despite his inconsistency in taking his pain medications.  *Id*.

The court concludes that summary judgment is appropriate in this case because, even viewing the facts in a light most favorable to the plaintiff, the plaintiff has not demonstrated that there exist genuine issues of material fact.  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial).

The affidavit of Dr. Marsha Jones, an NDOC staff physician, states that when a hernia is reducible and not incarcerated, surgery is considered elective, and the hernia may be properly managed through alternative treatments.  *See* #24, Ex. C, ¶¶ 7-9.  Plaintiff has provided no evidence, admissible or otherwise, to refute that this treatment plan is not medically acceptable.  *See* #30, Ex. 3.  While Dr. Pitts recommended surgery in September 2003, there is no evidence that the hernia was diagnosed as "serious" at that time or that emergency surgery was required; in fact, plaintiff's medical records indicate that it was not serious.  *See* #30, Ex. 1; *see* #25, D1, Doc. No. 69.  Further, although plaintiff attempts to

create a material issue of fact by contending that Dr. Scott failed to examine him on August

18, 2003 to determine whether his hernia was reducible or strangulated, *see* #30, p. 2,

plaintiff's own medical record indicates otherwise.  *See* #25, Ex. D1, Doc. No. 69 (diagnosing

an inguinal hernia that "easily reduces," indicating that Dr. Scott was successful at reducing

the hernia).  Plaintiff was treated through pain medication and a truss rather than surgery.

Plaintiff admits he has a difference in opinion with defendants concerning the proper

treatment of his hernia, *see* #24, Ex. A, p. 10, and the court notes that prison medical staff

does not violate the Eighth Amendment simply because its opinions concerning medical

treatment conflict with the opinion of the inmate-patient.  *Franklin v. Oregon*, 662 F.2d 1337,

1344 (9th Cir. 1981).

Further, although plaintiff argues that the delay in surgery risked "strangulation,"

plaintiff did not establish that the delay <u>actually</u> caused strangulation or any substantial harm.

*See Wood* 900 F.2d at 1335; *Estelle*, 429 U.S. at 104.  The defendants admit that there is a risk

of strangulation with hernias, but only when the hernia is "non-reducible," *see* #24, Ex. E, pp.

4-5, and plaintiff offers no evidence to counter this contention.  Plaintiff had surgery on

December 13, 2005 after it was determined that his hernia was no longer reducible, and,

therefore, no longer responsive to conservative treatments.  *See* #24, Ex. C, ¶¶ 11 and 12; *see

also* #25, Ex. D1, Doc. No. 69.  Plaintiff does not contend that his hernia was not properly

fixed or that, despite the surgery, he is suffering from injury caused by the delay (#30).

Plaintiff admits that Dr. Scott prescribed pain medication for plaintiff on August 19,

2003 to manage his pain.  *See* #24, Ex. A, pp. 21-22.   Plaintiff contends that he missed

evening pill call on occasion because his morning medication made him so tired that he slept

through pill call and dinner.  *See* #24, Ex. A, pp. 25-26.  However, it does not appear that

8

plaintiff ever requested that Dr. Scott change his medication to something that would not

cause such drowsiness, and instead he continually requested to be allowed to take his

medication when he wanted. *Id*. at pp. 27-30.

It is obvious that plaintiff is opposed to the prison's medication policy, which required

that plaintiff take his medication at prescribed times during the day, *see id*. at pp. 25-30;

nonetheless, the evidence shows that the medication was continually available to the plaintiff

until he stopped taking it entirely on his own. *Id*. at pp. 30, 42. Further, the court notes that

even after the plaintiff asked to take his medication at evening pill call only, plaintiff often

missed evening pill call. *See* #25, Ex. D3. Only after the plaintiff frequently failed to attend

and request his medication did Dr. Scott determine that the plaintiff was no longer in pain and

no longer in need of the medication. *Id*. at p. 30; *see also* #25, Ex. D1, Doc. No. 59.

Plaintiff presents no affidavits or sworn statements from his doctors that he was or is

in constant pain, *see* #30 and #24, Ex. A, p. 64, and he admits that he really only needed one

of his prescribed medications to relieve his pain. *See* #24, Ex. A, pp. 39-40. The fact that the

plaintiff did not always avail himself of his medications when they were available to him

suggests to the Court that the plaintiff was not in "chronic and substantial pain." *See Lopez v.*

*Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). Further, the court concludes that the fact that the

medication was continually available to the plaintiff until he decided to stop taking it does not

indicate defendants' deliberate indifference to plaintiff's medical condition.

The plaintiff also brings "access to treatment" claims against defendants Dickerman,

Ennis, and Farwell. *See* #16, pp. 3-4. The court concludes summary judgment should be

granted because there is no genuine issue of material fact as to these claims. Regarding

defendant Dickerman, the plaintiff admits that Dickerman gave the plaintiff a medical kite to

fill out on August 18, 2003, but then informed the plaintiff that he would have to wait until the next day to see medical because there was no one to escort him to the infirmary at that time. *See* #24, Ex. A., pp. 44-47, 54, 58.  Plaintiff admits that he then took his kite back so he could give it to his caseworker in the morning. *Id*. at pp. 58-59.  Plaintiff further admits that after 6 p.m., an inmate's condition generally needs to be "serious" in order to be seen by medical staff. *Id*. Considering that the plaintiff saw Dr. Scott the next day and Dr. Scott's notes do not indicate an emergency situation, the court concludes that the delay of less than twenty-four hours does not rise to a constitutional violation.

Regarding defendant Ennis, the plaintiff's caseworker, the evidence shows that when Ennis was informed of the plaintiff's pain on August 19, 2003, he immediately brought the plaintiff's kite to medical and then escorted the plaintiff to the infirmary. *See* #24, Ex. A, pp. 59-60.  Plaintiff admits that "Mr. Ennis did what he could in order to help me get to the infirmary" even though "that's not his position to do in the first place." *Id*. at pp. 60-61; *see also id.* at p. 62 (plaintiff admitting that Ennis did not delay his access to medical care). Therefore, the court concludes that there is no evidence that defendant Ennis delayed the plaintiff's medical treatment.

Finally plaintiff has presented no evidence whatsoever that defendant Farwell, warden of LCC, was involved in treatment decisions regarding plaintiff's hernia.  In fact, plaintiff admits that Farwell is not a medical caregiver and never denied him access to the medical infirmary. *See* #24, Ex. A, pp.63-64.  Thus, there is no evidence that defendant Farwell violated plaintiff's constitutional rights.

///

///

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that Plaintiff has failed to establish that there are any genuine issues of material fact that the defendants acted with deliberate indifference to his serious medical needs.  Further, as to defendants Dickerman, Ennis and Farwell, there is no evidence that they delayed the plaintiff's access to medical assistance.  As such, the court recommends that defendants' motion for summary judgment (#24/25) be **GRANTED**.

The parties are advised:

1.   Pursuant to 28 U.S.C.  § 636(b)(1)© and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#24/25) be **GRANTED**.

**DATED:** January 4, 2007.

_____

**UNITED STATES MAGISTRATE JUDGE**

11